# O'Neill v. The Venango Manufacturing Company, Appellant.

*Negligence—Master and servant—Factories—Elevators—Act of May 2, 1905, P. L. 352—Case for jury.*

Where in an action against a manufacturing company to recover damages for personal injuries sustained by an employee in a factory, there was evidence that while plaintiff was waiting at an unguarded elevator shaft for an elevator to descend, a heavy truck which had been moved to the shaft by a workman on the floor above, fell through the shaft, struck the floor of the descending elevator, and bounded upon plaintiff severely injuring him, and there was testimony to the effect that the accident could have been avoided if the shaft had been guarded by a cage, it was for the

jury to determine whether defendant had complied with Section 12 of the Act of May 2, 1905, P. L. 352, requiring that elevator wells shall be properly and substantially enclosed or guarded, and a verdict and judgment for plaintiff were sustained.

Argued Sept. 28, 1915. Appeal, No. 104, Oct. T., 1915, by defendant, from judgment of C. P. Venango Co., Nov. T., 1910, No. 32, on verdict for plaintiff, in case of Miles O'Neill v. The Venango Manufacturing Company, a Corporation. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ. Affirmed.

Trespass to recover damages for personal injuries. Before CRISWELL, P. J.

From the record it appeared that defendant maintained an elevator between the first and second floors in its factory which its employees were permitted to use, not only for the transportation of freight between the two floors, but for riding up and down when occasion required.

When the elevator platform was at the second floor, it formed a part of the floor; but when it was on the first floor or being lowered thereto, an opening or well was left in the second floor. This well hole was not enclosed, secured or guarded in any manner, except at the rear where the wall of the building would probably protect it.

On the second floor a trap or gate was constructed which was automatically lifted and lowered by the elevator; when the elevator platform was on the first floor this gate was lowered in front of the well hole on the second floor so as to form when in place a sort of protection or guard at the front of the well hole. When the elevator platform was at the second floor, this gate or trap was lifted to the ceiling of the second story, the bottom of it then being about six feet above the second floor, so that employees could pass under it. It was not lowered to its position on the second floor so as to guard the well hole before the elevator moved when being lowered

to the first floor, but moved down with the elevator, and did not get into position so as to protect this opening until the elevator platform was about six feet below the second floor. When the elevator platform was being lifted from the first floor to the second floor, this gate was lifted by the elevator when the platform had arrived within about six feet of the second floor, and carried up to the ceiling of the second story, thus leaving the well hole unprotected while the elevator platform was coming up to the second floor from the first floor.

The defendant company had placed a bell on a post about three feet above the second floor and another one on a post about five feet from the first floor. No elevator boy or person to operate the elevator was employed. Whenever one was on the first floor and wished to use the elevator, and found the platform to be at the second floor, he pulled a cord which was intended to ring the bell on the second floor, so as to warn the employees that the elevator was going to move and leave the well hole open. In like manner when one was on the second floor and wished to use the elevator, he pulled a cord which was intended to ring a bell on the first floor, to warn those below that the elevator was coming down. Having thus pulled the cord another rope was then pulled which would start the elevator. After having pulled the cord and started the elevator the operator had nothing further to do, as the elevator was operated by compressed air and moved automatically either up or down as required when the cord was pulled.

On the 11th day of January, 1910, plaintiff, who was in the employ of defendant, having occasion to use the elevator to carry some freight from the first to the second floor, came to the elevator when it was going up to the second floor. He waited until the employee using the elevator had left it, and then pulled the cord to ring the warning bell on the second floor; he then pulled the rope to start the elevator in motion and stepped back out of the way of the elevator as he had been instructed

to do when he first came into the employ. of the defendant company.

A buzz saw was in operation on the second floor, and another employee was coming past it on the second floor with a heavy truck or car to place upon the elevator. He did not hear the warning bell on account of the noise of the saw, and did not know that the elevator was going to move until it started just as he was about to wheel the heavy truck upon it. The gate was up at this time. Seeing the elevator start to move he endeavored to hold the truck back, but was unable to do so. He held on to it until he was struck by the descending gate, when he was forced to let it go and it fell through the well hole and there being no guard, bounded from the platform of the elevator to the floor below, where it again bounded and struck plaintiff who was standing back at the usual place waiting for the elevator to come down.

Defendant claimed on the trial that it was impracticable to put any guard or enclosure about the elevator or the elevator well, but upon cross-examination of the witnesses produced by defendant for this purpose, and by other witnesses it was shown that a wire cage had been shortly after the accident, attached to the ceiling of the first floor, extending down to within five or six feet of the first floor, through which the elevator was being operated without inconvenience at the time of the trial, and that if such cage had been there at the time of the accident, the injury would not have occurred.

Verdict for plaintiff for $4,250 and judgment thereon. Defendant appealed.

*Error assigned,* among others, was the refusal of the court to direct a verdict for defendant.

*G. G. Martin,* of *Martin & Crawford,* with him *Griffen & McBride, A. B. Jobson* and *James S. Carmichael,* for appellant.

*P. M. Speer,* of *Speer & Weigle* and *Glenn & Glenn,* for appellee.

PER CURIAM, October 28, 1915:

The negligence with which the plaintiff charged the defendant, and of which it was found guilty by a jury, was its failure to comply with the requirement of Section 12 of the Act of May 2, 1905, P. L. 352, that elevator wells shall be properly and substantially enclosed or guarded.   Whether there had been a compliance by the defendant with the terms of the statute, and, if not, whether its failure to comply was the proximate cause of the injuries sustained by the plaintiff, were questions for the jury.   They were submitted in a charge in which no error appears, and a specific instruction of the learned trial judge was that, if the jury should find that O'Neill had done anything he ought not to have done, or omitted to do anything he should have done that contributed to his injury, the verdict should be for the defendant.   The case could not have been taken from the jury, and nothing in the thirteen assignments of error calls for its retrial.

Judgment affirmed.